# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50287 | **DATE** | 3/5/2013 |
| **CASE TITLE** | U.S.A. vs. David England | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court denies the § 2255 motion as to all claims, denies the request for an evidentiary hearing, and dismisses this cause in its entirety.

*/s/ Philip G. Reinhard*

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT - OPINION

David England, a federal prisoner, filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction and sentence on numerous grounds. The Government has filed a response, and defendant has filed a lengthy reply. The record supports that this motion, as was defendant's trial, has been significantly complicated and protracted due to England's confrontational approach throughout this case.

While the court must grant a § 2255 motion when a prisoner's conviction or sentence was imposed in violation of the Constitution or the laws of the United States, such relief is reserved for extraordinary situations. Blake v. United States, 2011 WL 4475275, * 5 (S.D. Ill. Sept. 26, 2011) (citing Prewitt v. United States, 83 F. 3d 812, 819 (7th Cir. 1996)). Relief under § 2255 is available only if an error is jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice. Blake, at * 5. A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal. Blake, at * 5. Thus, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal absent a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal but were not; and (3) constitutional issues not raised on direct appeal unless the defendant demonstrates both cause for the procedural default as well as actual prejudice or that the failure to consider the issue would amount to a fundamental miscarriage of justice. Blake, at * 5.

Claims not raised on direct appeal that are couched in terms of ineffective assistance of counsel are not procedurally defaulted. Blake, at * 5. To establish constitutionally ineffective assistance of counsel, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors the result of the proceeding would have been different. Woods v. United States, 2009 WL 3787904, * 6 (N.D. Ill. Nov. 12, 2009) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)). If a defendant fails to make a proper showing under either of the prongs, the court need not consider the other. Woods, at * 6. Because counsel is presumed effective, a defendant bears a heavy burden in challenging his attorney's effectiveness. Woods, at * 6.

As to the effectiveness of appellate counsel, the two-prong test of Strickland applies as well. Woods, at * 6. Under the performance prong, an appellate counsel's performance is constitutionally deficient if he fails to appeal an issue that is obviously and clearly stronger than the claims counsel actually raised on appeal. Woods, at * 6. To establish prejudice, a defendant must show that there is a reasonable probability that but for his appellate counsel's deficient performance the result of the appeal would have been different. Woods, at * 6.

Further, a hearing is not always required pursuant to a § 2255 motion. Blake, at * 5. A hearing is required only if a defendant alleges facts that, if proved, would entitle him to relief. Blake, at * 5. However, if the motion, files, and records in the case conclusively show that the defendant is entitled to no relief, then a hearing is not required. Blake, at * 5. To obtain such a hearing, a defendant must submit an affidavit setting forth the basis for relief. Blake, at * 5 (citing Kafo v. United States, 467 F. 3d 1063, 1067 (7th Cir. 2006)). The specific allegations in the motion and affidavit, however, must go beyond merely unsupported assertions. Blake, at * 5.

## STATEMENT - OPINION

Here, defendant claims his sentence was illegal, some of the evidence was the product of an illegal search, he was denied the effective assistance of both trial and appellate counsel, he was prejudiced by various forms of prosecutorial misconduct, and this court was biased against him at trial and sentencing and committed errors during his trial, sentencing, and resentencings. The court will address each of these many claims.

The court rejects defendant's claim that 10 years' imprisonment is the statutory maximum for his four counts of conviction collectively. This claim was not raised on direct appeal. Further, the statutory maximum is 10 years on each count individually.

Defendant next asserts that his sentence must be concurrent as to all counts. This claim was rejected on direct appeal and may not be raised again in a § 2255 motion. Moreover, defendant's sentence of 262 months was properly calculated pursuant to U.S.S.G. § 5G1.2(d).

Defendant's claim that his sentence was improperly enhanced because the finding that he discharged a gun was required to be made by a jury as opposed to the court is defaulted as it was not raised on direct appeal. Additionally, as the established law now stands, such a finding may be made by the court for purposes of sentencing. See United States v. Spence, 450 F. 3d 691, 696-97 (7th Cir. 2006).

The court also rejects the claim that defendant's criminal history was improperly calculated as that claim was not raised on direct appeal. Contrary to defendant's assertion, his criminal history was properly calculated pursuant to U.S.S.G. § 4A1.1(a),(b),(c) based on his prior sentences of imprisonment.

Defendant's claim that the court improperly applied an obstruction enhancement based on his trial testimony is defaulted for not being raised on direct appeal. Moreover, the claim fails on its merits because the court made specific findings as to how defendant was wilfully untruthful and how such false testimony was material to the trial.

Plaintiff claims the court misapplied § 2A2.1 when determining his sentence. That issue was disposed of on direct appeal, United States v. England, 507 F. 3d 581, 590-91 (7th Cir. 2007), and may not be raised again in this proceeding.

Plaintiff next vaguely claims that the court misused information from his competency evaluation at both trial and sentencing. The claim is defaulted to the extent it applies to the trial and initial sentencing as it was not raised on direct appeal. As to defendant's second and third appeals based on his subsequent sentencings only, there was no claim that the use of the evaluation at those sentencings was erroneous. Further, the Seventh Circuit was aware of such use and did not suggest that is was improper. See United States v. England, 604 F. 3d 460, 462-64 (7th Cir. 2010).

Defendant's claim that his sentence on Count IV is disparate as compared to similar defendants was raised and rejected on direct appeal. See United States v. England, 555 F. 3d 616 (7th Cir. 2009), and England, 604 F. 3d 460. It may not be raised again in this proceeding.

Defendant next claims that the search of his mother's car, which revealed a handgun used against him at trial, violated the Fourth Amendment. This claim is barred in this § 2255 proceeding as defendant had a full and fair opportunity to litigate that claim via his pre-trial motion to suppress. See Owens v. United States, 387 F. 3d 607, 609 (7th Cir. 2004).

Defendant next presents numerous claims based on the ineffective assistance of trial counsel. All of these claims fail, however, as defendant represented himself with the additional appointment of stand-by counsel. One who exercises the right of self-representation cannot contend he received ineffective assistance of counsel. Peoples v. United States, 403 F. 3d 844, 849 (7th Cir. 2005) (citing Faretta v. California, 422 U.S. 806, 834 n. 46 (1975)). Nor can there be any claims based on the ineffective assistance of stand-by counsel in the face of a defendant's exercise of his Faretta right of self-representation. United States v. Battaglia, 458 F. 3d 585, 597 (7th Cir. 2006). To the extent defendant contends he was forced to represent himself such claims fails as the Court of Appeals has already rejected his claim that his waiver of right to counsel was not knowing and voluntary. See England, 507 F. 3d at 586. Further, there is no indication whatsoever that either stand-by counsel prejudiced defendant in any way. See McKaskie v. Wiggins, 465 U.S. 168, 177 (1984).

Defendant next raises a series of claims based on the asserted ineffectiveness of his appellate counsel. Defendant first contends that he was forced to contact the Court of Appeals in writing because his appellate counsel was not working on his appeal. There is no evidence that defendant ever wrote to the Court of Appeals in this regard. To the extent he attempted to file his own pro se appeals while being represented by appointed appellate counsel, he later indicated, through that same appellate counsel, that he no longer wished to pursue any appeals on his own. Additionally, defendant's claims that his appellate counsel ignored him and only spoke to him a few times, while being merely defendant's unsupported characterization, is belied by appellate counsel's detailed affidavit to the contrary (see Exhibit A to Government's response) as well as the fact that appellate counsel actually succeeded in obtaining a vacature of his sentence, not once but twice. Further, there is no evidence that any meeting occurred between this court, the United States Attorney's Office, and the Court of Appeals.

Defendant also contends that his appellate counsel was ineffective for only rasing three claims in his original direct appeal. However, he has failed to specify what additional issues should have been raised or how any such issues would have been "obvious and clearly stronger" that the issues actually raised or that had such issues been raised they would have affected the outcome of the appeal. See Woods, at * 6. Thus, this claim also fails.

Defendant next raises a litany of claims of prosecutorial misconduct. All of these claims are defaulted as they were not raised on direct appeal. Moreover, for the following reason they all lack merit.

Defendant has pointed to no evidence that any of his family members requested his phone calls to them from jail be

blocked at the direction of the Government. This claim fails.

Likewise, there is no factual support for defendant's claim that a police report was prepared by the Rockford Police Department at the behest of the Government or its agents. As such, this claim lacks merit.

There is also no merit to defendant's claim that the Government "helped" witnesses with their testimony during the grand jury proceedings. There is no factual basis for such a claim, nor has defendant specified how any such testimony affected his case. Further, the ultimate jury verdict, based on proof beyond a reasonable doubt, necessarily trumped the true bill returned by the grand jury which was based on the lesser proof standard of probable cause.

Defendant's claim that the Government instructed the local state's attorney to withhold discovery in the state criminal proceeding is baseless. Not only that, but defendant has failed to identify how that alleged conduct materially impacted his case in this court.

Defendant also claims that the Government and its agents told witness Perez certain things designed to get him to lie about seeing defendant with a gun. This claim fails because there is no indication that Perez was ever told that defendant reported him to the police for selling drugs. As for telling Perez defendant had threatened Perez's baby, such fact was true. Nor is there any authority suggesting that it is improper for the Government to advise a witness of a known threat to the witness or his family member from a defendant. Not only that, by being advised of such a threat, Perez was just as likely to refuse to testify as to get on the stand and make something up against defendant. This claim lacks merit.

There is also not factual basis to support defendant's claim that the Government instructed defendant's state probation officer to discharge defendant unsuccessfully from his probation in an effort to increase his criminal history points for purposes of sentencing in this court. The termination of his state probation was triggered by the federal charges in this court and not by any apparent direction of the Government.

Defendant next claims that the United State's attorney, ATF agents, and United States Marshals, while waiting outside a room in which he was meeting with his stand-by counsel, listened in on those conversations. This claim was raised in this court prior to trial, and defendant admitted he had no proof that any of the conversations were actually overheard. The mere speculation that Government agents overheard such conversations, without more, does not support such a claim.

Similarly, there is no evidence whatsoever that any United States Marshals were instructed to look at defendant's legal materials in his cell or that such information was ever conveyed to the United State's attorney. Nor has defendant shown what information was observed or how any such observation prejudiced his case.

Defendant also claims that the Government interfered with his competency evaluation by sending the examining physician picture and documents about defendant's case. There is no indication, from the evaluation or otherwise, that such information was conveyed to the evaluator. Nor has defendant shown how any such information impacted his evaluation negatively or otherwise prejudiced his case.

Defendant claims the Government filed a motion that falsely asserted that witness Perez and other witnesses were drinking beer the night they claimed seeing defendant with a gun. According to defendant, this was false because the witnesses denied drinking that evening and the Government raised the issue of their drinking in an attempt to justify inconsistencies in their testimony. This claim is baseless as these witnesses in fact testified they were drinking on the night in question. Further, the Government was required to disclose such information to defendant prior to trial. Lastly, it was in fact proper for the Government (and defendant) to question the witnesses about their drinking.

Defendant's claim that he was not allowed to examine certain evidence prior to trial fails. Defendant never sought, either via motion or otherwise, to inspect any evidence. Nor has he spelled out how the failure to examine any particular evidence prejudiced him in any way.

Defendant next contends that he was prejudiced by the Government not disclosing to him 200 pages of discovery and DNA expert documents until the first day of trial. Such disclosures, however, were necessitated by defendant's last-minute decision to represent himself. Nor has defendant shown that any late disclosure of these materials in fact prejudiced his ability to present his defense.

Defendant also claims the Assistant United States Attorney (AUSA) called him names during the trial and pointed at him in an effort to make him look bad to the jury. Aside from the prosecutor pointing at him during closing argument, which is not remotely prejudicial, there is no evidence of his being called names or otherwise being made to look bad before the jury.

Defendant's claim that the AUSA cut him off during his examination of witnesses, called him a liar to the jury, and rolled his eyes while he examined witnesses, fails. This court was obviously in the courtroom during the trial and never observed the AUSA engage in such conduct.

Defendant further claims that the Government knowingly presented perjured testimony at his trial. This claim fails because the alleged perjured testimony is unsupported by anything other than defendant's own disagreement with the substance of various witnesses' testimony. Further, there is no showing that the Government knew of any such perjured testimony.

Lastly, defendant presents additional claims based on alleged lies by the Government that are sorely undeveloped and equally unsupported. These vague and undeveloped claims are rejected.

The remaining category of claims raised by defendant all relate to this court's alleged bias at trial and sentencing and errors the court committed during those proceedings. In that regard, defendant claims that he was denied access to a legal library. This

claim was raised and denied at trial and not raised on direct appeal. While a criminal defendant has a right of meaningful access to the courts, that does not necessarily mean a right to access a law library and that right may be satisfied instead by appointment of stand-by counsel. United States v. Chapman, 954 F. 2d 1352, 1362 (7th Cir. 1992).

Defendant next argues that this court refused to consider his complaints about his attorneys, refused to give him a new attorney, argued with him at various court dates, and forced him to represent himself. These claims for the most part relate to defendant's decision to represent himself and his waiver of his right to counsel, which was affirmed on direct appeal. To the extent defendant contends the court argued with him at certain court proceedings outside the presence of the jury, he has not identified, nor is the court aware of, any prejudice that resulted from the asserted "arguments."

Defendant further claims that the court did not require stand-by counsel to locate witnesses and research defendant's case. This claim was not raised on direct appeal and is procedurally defaulted. Moreover, there is no merit to this claim as the court instructed defendant more than once to disclose to his stand-by counsel the witnesses he needed for trial. Nor has defendant pointed to any specific research that should have been done or how he was prejudiced from the lack thereof.

Defendant contends the court prohibited him from completing the cross-examination of Officer Muraski at the suppression hearing. While this claim is defaulted for not being raised on direct appeal, there is simply no factual support as defendant was allowed to cross-examine Muraski extensively.

Defendant claims the court improperly imposed certain security measures while he was in court, including handcuffing and shackling, eliminating sharp objects such as pens and pencils from defense table, and having Marshals in close proximity of defendant during sidebars and while testifying. This claim was never raised at trial or on direct appeal. Further, the court made a record of the need for security measures based on defendant's own words and actions. Additionally, there is no indication that defendant was ever handcuffed or shackled in the presence of the jury. To the extent he was restrained outside the presence of the jury, there is no constitutional violation.

Defendant claims the court denied him the opportunity to obtain an expert witness to examine the gun and the DNA evidence, and any gunshot residue on the car. While defendant sought to suppress the Government's DNA evidence, he never moved for appointment of his own DNA or gunshot residue expert. He failed to file any such motions notwithstanding the court's continuing urging, right up until five days prior to trial, for him to discuss with stand-by counsel any motions he would like to file.

Defendant next asserts that the court denied his motion for continuance and forced him to proceed to trial even though he was unprepared. This issue was not raised on direct appeal and is defaulted. In any event, the denial of the continuance was a matter of discretion. See United States v. Tingle, 183 F. 3d 719, 723 (7th Cir. 1999). Defendant sought the continuance the first day of trial. Based on the record of defendant's persistent vacillation between proceeding pro se and with counsel and this court's extensive advice to defendant to work with his stand-by counsel to file any appropriate motions, and the record made by the court in denying the last-minute motion to continue, the court rejects defendant's present claim on that basis.

Defendant further claims the court did not allow him to cross-examine some of the Government's witnesses. This claim was not raised on direct appeal and is defaulted. Notwithstanding the default, the record shows defendant had ample opportunity to cross-examine every witness. He has also not shown any prejudice from his not having been permitted to conduct cross-examination.

Defendant contends the court denied him the opportunity to participate in jury selection or use his peremptory challenges. While not being raised on direct appeal, this claim is belied by the record which reflects defendant participated meaningfully in jury selection and did in fact exercise both peremptory and for-cause challenges.

The court also rejects defendant's claim that he was not allowed to play at trial audio recordings of himself or examine Government witnesses. Defendant never asked to play any such recordings, and he was, as discussed, allowed to examine all Government witnesses.

Defendant's claim that the court told the jury that the Government's witnesses were credible also fails. There is no indication in the record that the court so advised the jury, either orally or via written instruction.

The court denies the claim that it told defendant when to testify. This claim was not raised on direct appeal, and is also without merit. The court retains discretion as to how the trial should proceed, including the timing of testimony. Defendant was allowed to testify and has not shown how the timing of his testimony prejudiced his case.

While defendant claims he was not permitted to call his witnesses or talk to them during the trial, he in fact was allowed to subpoena numerous witnesses as necessary. Defendant has not indicated how he was prejudiced by not calling a particular witness.

Defendant claims the court forced him to abbreviate his closing argument. This claim was not raised on direct appeal. Again, the court has broad discretion for controlling such matters as the length and timing of closing arguments. Moreover, the claim is meritless as defendant was given over an hour for closing, more than ample time for him to argue his case.

Defendant contends he was not allowed to present his theory in defending the charge of threatening a witness. This simply not true as defendant did in fact present such a defense via his own testimony, cross-examination, and closing argument. Thus, the claim is denied.

Defendant claims that the court told the jury it must reach a verdict by 6:00 p.m. Not only is this issue defaulted for failing to include it in his direct appeal, it is also completely contradicted by the record. The record reflects as follows: " I'm going to thank the two alternate for being here. You will be discharged. I'll let you remain here for just a few more minutes with the other

| STATEMENT - OPINION |
|---|

jurors while I sum up.

And the only other thing, really, that I have to say will be that it is now about ten minutes after 4:00[pm]. You people are given the case at this hour. You can choose to deliberate for whatever length of time that you people feel, and if you wish to go after the normal hours of 5:00[pm], you may do so, and if you wish to continue later into the normal dinner hour and you feel that is necessary, I will try to have pizza brought for you. If, on the other hand, you prefer that you still have deliberations, you have not arrived at a verdict, and wish to adjourn at any time after I send you back, you may do so, and then you would have to come back on Monday. So, that's where we are." This record clearly refutes defendant's assertion that the jury was told it must reach a verdict by 6:00 p.m. Therefore, this claim is also denied.

Lastly, defendant vaguely and minimally contends that the court hindered defendant's second and third sentencing hearings and interfered with his appellate attorney's representation. This undeveloped claim is entirely void of any factual support and is insufficient to support any relief.

For the foregoing reasons, the court denies the § 2255 motion as to all claims, denies the request for an evidentiary hearing, and dismisses this cause in its entirety.